ANDERSON-DULIN-VARNELL CO. *v.* J. W. WILLIAMS *et al.*

(*Knoxville.*   September Term, 1923.)

1. **CORPORATIONS.** Unauthorized matter in hotel charter, as to liability for debts exceeding capital, disregarded as ineffective.

Under Acts 1875, chapter 142, section 18, indicating the form of hotel charters, an unauthorized clause providing individual li-ability of directors for debts they consented to beyond the cap-ital stock, neither added to nor impaired the charter, and in construing it will be disregarded, in view of the history of legislation. (*Post, p.* 391.)

Acts cited and construed:   Acts 1875, ch. 142, sec. 18.

Cases cited and approved:   Williams v. Railroad Co., 68 Tenn., 488; Tenn., Automatic Lighting Co. v. Massey, 56 S. W., 35; Shoun v. Armstrong, 59 S. W., 790; Heck v. McEwen, 80 Tenn., 97.

2. **CORPORATIONS.** Hotel charter held valid as substantial com-pliance with statutes.

Under Acts 1875, chapter 142, section 18, prescribing and requiring a certain form of charter for hotel corporations, a charter omit-ting five statutory clauses, two conferring privileges, and two liabilities, which were substantially incorporated in later para-graphs, was valid as in substantial compliance, notwithstanding an unauthorized clause providing individual liability of directors for corporate debts, consented to by them in excess of the capital stock.   (*Post, pp.* 391, 392.)

3. **CORPORATIONS.** Creditors cannot plead estoppel against di-rectors from illegal charter provision not known nor relied upon.

In the absence of any allegation that complainant creditors dealt with the corporation with actual knowledge of a charter provision making directors individually liable for debts authorized by them in excess of the capital stock, which provision was contrary to

Anderson-Dulin-Varnell Co. v. Williams.

the form of charter prescribed by Acts 1875, chapter 142, section 18, they could not plead estoppel as against the directors, since complainants could not have constructive notice of an illegal cause, nor had they relied upon it. (*Post*, *p.* 392.)

4. **CORPORATIONS.** Hotel charter must conform to special act, though framed under later general amendment.

Acts 1875, chapter 142, sections 6, 25, especially prescribed the exact form in which hotel charters must be worded. The amendment of 1903 (Acts 1903, chapter 474) prescribed a general form for corporations not previously provided for. *Held*, that a hotel charter framed in conformity to the amendment must conform to the former act; hence a clause authorized by the amendment, but inconsistent with the previous act, must be read out. (*Post*, *pp.* 392, 393.

5. **CORPORATIONS.** Unauthorized power to ship and sell water held not to change primary purpose of hotel corporation.

Acts 1875, chapter 142, section 18, prescribed and required a certain form of wording for hotel charters. The amendment of 1903 (Acts 1903, chapter 474) provided a general form of charter wording for corporations not specially provided for. *Held*, that a clause authorizing the corporation to ship and sell water contrary to the special statute, but conforming to the amendment, did not change the primary purpose to operate a hotel at a mineral spring or watering place. (*Post*, *pp.* 393, 394.)

Case cited and approved:  Doty v. Tel. & Tel. Co., 123 Tenn., 329.

### FROM KNOX.

Appeal from the Chancery Court of Knox County.— Hon. CHARLES HAYS BROWN, Chancellor.

GREEN, WEBB & TATE, for Anderson-Dulin-Varnell Co.,

FRANTZ, McCONNELL & SEYMOUR, for Williams and others.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

In order to meet the growing demands of modern business, the legislature passed, in 1875, a general act to provide for the organization of corporations. Acts 1875, chapter 142. Sections 1 to 4, inclusive, provided for the organization of charitable, religious, and other general welfare, or not for profit, corporations. Section 5 provides:

"That the general powers of all corporations chartered for purposes of individual profit, the provisions of and restrictions in said corporations shall be as follows," and proceeds to set out the general powers, subject to expressed limitations, to be granted to all corporations of this class which may obtain charters in the manner prescribed in section 26 of the act. The first paragraph of this latter section reads as follows:

"Be it further enacted, that any five or more persons, over the age of twenty-one, desiring to form corporations for any of the foregoing purposes, shall copy the form of charter aforesaid adapted to the purpose, filling the necessary blanks, and append to the same an application in these words: 'We, the undersigned, apply to the State of Tennessee, by virtue of the laws of the land, for a charter of incorporation, for the purposes, and with the powers declared in the foregoing instrument. Witness our hands, the ——— day of ———, 18—' (to be signed by the applicants)."

The section then provides that when this instrument has been duly registered and a certificate given by the Secretary of State under the great seal of the State the formation of the company as a body politic shall be com

plete, and that its validity shall not be questioned in any collateral proceeding. It will be observed that section 26, as above quoted, expressly and definitely provides that the persons "desiring to form corporations for *any of the foregoing purposes* shall copy the form of charter *adapted to the purpose*, filling the necessary blanks," etc. -

Now in preceding sections, 6 to 25 included (excepting sections 19 and 20, which relate to amendments and publication of lists by the Secretary of State), forms had been set forth for the use of persons desiring to form corporations for any one or more of the various purposes indicated. Section 18 reads as follows:

"Be it further enacted, that the form of a charter for a hotel in a city or town, or at a mineral spring, or other watering place, shall be as follows:

" 'State of Tennessee—Charter of Incorporation.

" 'Be it known, that (here insert the names of five or more persons above the age of twenty-one years) are hereby constituted a body politic and corporate, by the name and style of (here insert the name of the corporation), for the purpose of erecting, furnishing and keeping a hotel for the entertainment of guests and invalids, at or near a mineral spring in the county of ——, or for the purpose of erecting or furnishing a Hotel in a town or city' (here describe the county and locality of the tract of land or lot upon which the hotel is already situated or to be built, and also the metes and bounds of the tract of land belonging to the corporation)."

The general powers, etc., are contained in section 5.

Then follow certain specific provisions applicable to this particular form of charter, for hotels, just as other

specific provisions are contained in other sections providing forms of charters for other purposes.

Since 1875, in response to demands as they arose, from time to. time, by amendments to this General Act the legislature has provided forms for additional charters, always restricted to purposes specifically defined and always expressly providing that the form of charter for the purpose designated *"shall be* as follows," thus apparently intentionally limiting the charter in every case to the particular form described for the specific purpose.

However, with the evident purpose of eliminating the necessity of repeated amendments to the act of 1875, in 1903 the legislature passed an act, being chapter 474, the opening paragraph reading as follows:

"Be it enacted by the general assembly of the State of Tennessee, that all private corporations, excepting those now specifically provided for by existing statutes, for the transaction of any lawful business, or to promote or conduct any legitimate object or purpose for individual profit, may be formed and a charter obtained in the following manner. Any five or more persons over the age of twenty-one years, desiring to form such a corporation shall copy the following form of charter:

"State of Tennessee. Charter of Corporation. Be it known, that by virtue of the general laws of the land (here insert the names of the incorporators); are hereby constituted a body politic and corporate, by the name and style of (here insert the name of the corporation), for the purpose of (here state specifically the purposes of the corporation, and amount of capital stock)."

Then follows, first, section 5 of the act of 1875, in harmony with the forms for the various purposes provided

Anderson-Dulin-Varnell Co. v. Williams.

for by that act and its amendments, and, next, as in many other charter forms, certain specific provisions.

With this brief preliminary review we come now directly to consider the questions presented on this appeal.

The bill in this case alleges that—"The Whittle Springs Company was incorporated under the laws of the State of Tennessee on or about July 8, 1916, with a capital stock of $80,000, and that on or about October 3, 1917, the capital stock of said company was increased to $150,000. The said company was organized for the purpose of erecting a a hotel at Whittle Springs in the suburbs of Knoxville, and said hotel was actually, in fact, erected and put in operation."

It then charges that the charter of Whittle Springs Company contains a provision to this effect, namely: "If the indebtedness of said company shall at any time exceed the capital stock paid in, the directors assenting thereto shall be individually liable to the creditors for said excess."

Predicating liability upon this charter provision, the bill then seeks to recover from defendants as directors certain large sums of indebtedness, the corporation being insolvent, alleged to have been assented to by them, in excess of the capital stock paid in. The issue is raised by demurrer; the grounds being thus stated:

"It is shown by the allegation of the original bill that the Whittle Springs Company was incorporated for the purpose of erecting and operating a hotel, and that it was incorporated under the laws of the State of Tennessee. At the time of said organization and incorporation the Acts of the General Assembly of Tennessee of the year 1875, chapter 142, section 18, and of 1897, chapter 32, had provided a form of charter under which a corporation of that

character could and must be organized, and no other form of charter could be issued to a hotel company.. It is alleged by paragraph 2, p. 2, of the bill that the charter of the Whittle Springs Company contained the following provision:

" 'If the indebtedness of said company shall at any time exceed the capital stock paid in, the directors assenting thereto shall be individually liable to the creditors for said excess.' And it is upon this provision in the charter that the complainants seek to hold this defendant and two of the other directors of the corporation individually liable for its indebtedness in excess of the amount of the capital stock paid in. It appears from an examination of the acts of Tennessee authorizing the incorporation of hotel companies that the charter prescribed by law for a hotel company contains no provision, and if, as a matter of fact, the charter of incorporation of the Whittle Springs Company did contain such a provision then it was a mere surplusage, and will be read out of the charter and treated as a nullity in the same manner as the court will read into a charter of incorporation a provision that the act providing for the organization thereof required to be inserted therein."

Shall this director liability clause be given effect as a legally authorized provision of the charter granted to Whittle Springs Company? The charter of this company was granted, as charged in the bill and as appears from the charter itself, for a hotel at a watering place. This clause is not among the specific or special powers, liabilities, or limitations set forth in the form prescribed in section 18 of the Acts of 1875, authorizing the granting of charters for such a purpose, and it is to this extent, at

Anderson-Dulin-Varnell Co. v. Williams.

least, a departure from the requirements of this section of the act as expressed in these opening words:

"Be it further enacted, that the form of a charter for a hotel in a city or town, or at a mineral spring, or other watering place, shall be as follows."

It is well settled that matter included, not prescribed by the specific forms adopted by this act and its amendments, adds nothing legally, and in construing the charter, will be read out of it; and, as a corollary, that the inclusion of such unauthorized matter does not impair the validity of the charter. *Williams* v. *Railroad Co.*, 9 Baxt., 488; *Tenn. Automatic Lighting Co.* v. *Massey* (Tenn. Ch. App.), 56 S. W., 35; *Shoun* v. *Armstrong* (Tenn. Ch. App.) 59 S. W., 790; *Heck* v. *McEwen*, 12 Lea, 97.

The form of charter of Whittle Springs Company as actually issued substantially conforms in its general powers to the requirements of the act of 1875. After embodying section 5 of the act as called for, the further language of section 18 is omitted and other language substituted. The omitted clauses are five in number—two conferring privileges, the right to a deputized peace officer and the right to borrow money, but this latter right had been included in the general powers under section 5. The two liabilities of stockholders to servants and of directors for illegally declared dividends are, in substance, incorporated in added paragraphs. The fifth omitted clause is a declaration of the applicability of existing laws regulating hotelkeepers, and innkeepers, which applied whether so incorporated in the charter or not.

It will thus be seen that this charter is in substance and in essentials a valid charter in accordance with the requirements of the act of 1875. The variations from the

prescribed form do not affect its validity. The omission of privilege recitals certainly does not do so, and the omitted recitals of liabilities are otherwise and nevertheless operative. Does the voluntary and unauthorized inclusion of the liability clause invoked in this proceeding afford a basis for this action? As already stated, it is no part of the charter as granted by the State. The secretary of state has no discretion to add to or deduct from the forms prescribed by express enactment. His duties are purely ministerial.

Is it a contract for the benefit of creditors, binding upon these subsequently elected officers of the corporation, from the repudiation of which they are estopped? Suffice it to say that this is not the theory of the present suit, that there is no allegation that these complainants dealt with this corporation with actual knowledge of such a clause in its charter, and, being an unauthorized and illegally included clause, they had no constructive notice of it, and, not having relied upon it, no estoppel can be pleaded by them. Moreover, whatever may be true as to the applicants signing this charter, it may well be insisted by these defendants that they also were without actual or constructive notice of the existence of this unauthorized clause, and have incurred no obligation by reason of it.

But it is insisted, with great earnestness on behalf of complainants, that this charter conforms in its terms and provisions to the act of 1903, to which reference has been made, and that it is apparent that the application was made and the charter obtained under that act, and this form does include the director liability clause relied on. It is true that the language of the Whittle Springs Company charter follows the language of the form prescribed

by the act of 1903, but we are constrained to hold that, in so far as it does so and departs from the act of 1875, its recitals are unauthorized. If this charter cannot be held to come sufficiently within the act of 1875 to consti- tute a valid grant, then it must fall altogether. A charter for a hotel cannot be issued under the act of 1903, because the act of 1875 prescribes a form which "shall be" used for a charter granted for this purpose. And the act of 1903 is expressly limited to the use of corporations not "now specifically provided for by existing statutes." This necessarily excludes hotel corporations, which had been specifically provided for by an existing statute. We must either hold the Whittle Springs Company to be incorpo- rated under the act of 1875, or hold it to have no valid charter at all. The bill makes no issue of charter in- validity, but charges it to be incorporated, and we have hereinbefore found it to be validly so.

It is insisted that, included in this charter, is a power to ship and sell water, and that this power is one not rec- ognized or provided for in the hotel charter form under the act of 1875, and that this fact supports the insistence that this charter is issued under the general 1903 form act. This clause also must be read out of the charter as an unauthorized inclusion, but, while unnecessary here to decide, it is plausibly insisted that the right to sell the water of the mineral spring at or near which the hotel is authorized by the charter to be conducted is an im- plied right of power incident to and growing out of those powers expressly granted. *Doty* v. *Telephone & Telegraph Co.,* 123 Tenn., 329, 130 S. W., 1053, Ann. Cas., 1912C, 167, and authorities cited. But, however this may be, the in- clusion of this clause is insufficient to change the funda-

mental and primary purpose of this organization from that of a hotel at a mineral spring or watering place, which purpose can be granted charter authority only by compliance with the provisions of the act of 1875.

It follows from what has been said that the decree of the chancellor must be reversed, and the demurrer sus-tained, and the bill dismissed.